Good morning and welcome to the Ninth Circuit. I'm Michelle Friedland and I'm very pleased to be sitting with Judge Bybee and Judge Miller. We're all very happy to be here in Alaska and thank you for joining us this morning. Our first case on calendar is Weibel Ranches v. United States 22-35703. Each side will have 15 minutes. Thank you, Your Honor. May it please the Court, Counsel. My name is Matthew Kalmanson and I am representing the Weibel plaintiffs. The issue on appeal as it pertains to my client concerns the Big Summit Ranch easement, which is an easement that was granted to the United States in 1966. It traverses my client's property to access some BLM grazing lands in Crook County, Oregon. I'm happy to answer any questions the Court has about Wilkins or its impact on this case, but what I'd like to do in the short time I have is jump to the government's arguments for affirmance, notwithstanding Wilkins. And as I read it, there are essentially two arguments that are being made. There's a broad argument and a more narrow focused argument. And the broad argument is that the mere recording of the easement in favor of the government created a cloud on title, which put any reasonable landowner on easement had to be brought within the statute of limitations period, which is 12 years. The more focused version of that argument is that the word licensee in that easement put a reasonable landowner on notice that the government could take a position that it had never taken. And that position is that the Big Summit Ranch easement could be open for public use. And I know Your Honors are familiar with the facts, but very briefly, this is an easement that was granted in 1966, and it has been alleged, and again this is a pleading motion, we're past the idea that this is a jurisdictional issue, it has been alleged that that road has been closed to the public before, during, and after the creation of the easement. And the only time it was opened was in 2021, after a dispute arose regarding the Teter's Road easement, which you'll hear about next. Now the problem with both versions of this argument is that they're based on the wrong accrual standard. They are based on fee simple cases, where the court has correctly stated that if there is a cloud on title, that is enough to put a landowner on notice that there's this other entity that is creating, that has a claim to that property. And so we're talking about arguments over fee simple, a cloud on title is not an argument about fee simple. This is an argument about the scope of an easement. And in this court's own words, in the McFarland case, an easement, of course, is different. And the reason the easement is different is because the landowner and the holder of the easement would understand there's a cloud on title, but that could be completely consistent with the party's understandings about the scope of that easement. For example, in this case, if everyone agreed that this easement did not allow for private rights, it doesn't matter that there is a quote-unquote cloud on title, because the landowner would have no reason to know that they have to bring a claim, because there is no dispute at that point. So can I ask though, the government was using the access, right? The government was using the easement, and so were what you would call licensees even, like people who were coming to fix things, is that right? The people who were using it, according to the allegations, and there were declarations that were submitted, Your Honor. At the time, this was a jurisdictional issue. But according to the allegations, it was used by the government for administrative purposes and essentially for fire access, and that's it. There was a gate that closed it. There was no trespassing signs, and it stayed that way for roughly 60 years. So there were... The lands were used for grazing purposes by the owner of the Big Summit Ranch, my clients. But other than that, it was just used for administration purposes. It wasn't used just generally for the public with open fences. And were there, to your knowledge, were there any licensees that ever came on the property? To my knowledge, no. It certainly wasn't alleged, Your Honor. And what do you think licensees meant? I mean, since obviously that grant was there, and that's been there since it was first granted in 1966. So what do we think licensees meant? And does Oregon law suggest anything about licensees? To take those in turn, Your Honor, there is grazing that is going on on these island parcels. So arguably, licensees could mean somebody who had a permit or a license to use these BLM lands for that specific purpose. They would need to get there. In this case, that is already my client who owns the land. But you could imagine a situation where maybe somebody else has a permit to cross that land. Again, that wasn't pled. The second question about, does Oregon law have anything to say about this? The answer is the government hasn't cited any. Again, this is a question about the statute limitations that was raised on a pleading motion. The word licensees in an easement doesn't have any particular meaning in Oregon? It doesn't have a particular meaning that would say, open to the public that I'm aware of, Your Honor. I don't know of a single Oregon case that states that an easement in favor of the government means... Excuse me, an easement in favor of the government that allows access to the public. Does Oregon have anything to say about licensees in a contract between two private parties? I'm unaware of any case, Your Honor, that would say licensees means the public. What about Curtis Nevada Mines, United States versus Curtis Nevada Mines? Yes, Your Honor. So Curtis Nevada Mines was a case where this court held that the word licensee as used in the Multiple Use Act in a specific statute was ambiguous. And that case had to do with lands held by the government in fee simple. So these are public domain lands. And the question was, does the public have access to those lands under the Multiple Use Act? The word licensees and permittees is in that statute. The court said, the language is ambiguous. But then went on to say, it's somewhat... I mean, it said somewhat ambiguous, but then said the best interpretation is it includes the public. Correct, Your Honor. And it did that by looking at the legislative history, and it looked at the historical use of lands that are in the public domain over the last 100 some odd years. This is an easement. This is not lands in the public demands. But if we did the same kind of analysis here, and again, let's remember that this is a statute of limitations case. We're not talking about the merits, but if we did the same type of... Could we be talking about the merits, though? Is there anything else that would be introduced? I mean, couldn't we affirm on any ground? And why couldn't we affirm on the merits? Because if we found that licensee was ambiguous, as the court did in Curtis Mines, we would then have to look into what the parties intended. That's how Oregon would evaluate what this easement meant. So we would look at the language, if it's ambiguous, and Curtis Mines says the word is ambiguous, at least as used in a statute, and then looked at historical use. We would do the same analysis here. And that information is not in front of you, Your Honor. The government never put it in, because this was a pleading motion that was decided on jurisdictional grounds. So again, if we would do the analysis that the court... Excuse me, that the government asks to do, which is the Curtis Mines analysis, we would need evidence. It would be a disputed factual issue. And is there evidence that you could put in? We could put in... In fact, we have put in evidence. We've put in evidence that the historical use was to prohibit public access. That's what we put in when this was a jurisdictional motion, Your Honor. And is there other evidence? I mean, I guess my question still remains, is there more that the record would have if we send it back instead of just deciding it now? Perhaps. I mean, we would have to do a little bit more digging into what the parties intended at the time. So to the extent those people are still around, or the government has that type of evidence, there could be discovery. And is the land being used today for public access? The government has opened up the fence, so the road can be used by public access, and that's what led to this lawsuit. My clients then brought this lawsuit, because the public was using it, there was vandalism, there was hunting going on in their lands, there was trespass. It's essentially the same as Wilkins, and that's what got us to this point. And I'm going into my co-counsel's time, Your Honor. That's fine. We'll reset the clock. Alright, thank you. May it please the court. I am Julie Smith, appearing on behalf of South My client's case is the Teeter's Road easement, and on appeal are two claims, the second claim and the first claim. And I'm gonna start with the second claim. And the issue in the second claim is whether that second claim states it is a quiet title action claim, whether jurisdiction lies under the Quiet Title Act. And the one little bit I would like to impart, if I can, with the limited time we have here, is that that claim really is not materially different than the claim at issue in Wilkins or the Weibel claim, because it seeks the same essential declaration of easement rights. It seeks a declaration that the public access is not allowed. So... How does it differ from the relief that you're seeking in the first claim? How does it seek from the... It differs from the relief in the first claim. The first claim is limited just to the gap in the easement. It is a quiet title action just to the gap in the easement. And the second claim is seeking a declaration that the public access is not allowed. Well, it's seeking... I mean, I'm looking at paragraph 23. It's seeking a declaration that there was about a 2015 agreement, right? That as a result of that 2015 agreement, that public access is not allowed. So, I mean, in your view, is that equivalent to a declaration that the government does not have an easement on this road? Or is it something distinct from that? Well, the declaration that it is seeking is pretty narrow, that it is a... That public access is not allowed as a result of that agreement. Part of that agreement was, I think, that the government would still have administrative access to the easement. I think that's more in the nature of a license, but I think that's what still needs to be sorted out as part of that. But the actual... The way the complaint is currently drafted, it only seeks a narrow declaration that public access is not allowed. And it's your view that the waiver of immunity that allows you to get that relief against the government is the Quiet Title Act? Yes. And I guess would... Is it important to the relief that you're seeking there that it reference the agreement? I mean, I understand the agreement is the reason that you think the easement is limited to government access and not public access, but is it important to the ultimate declaration that you're seeking that it be about the agreement as opposed to just a declaration that whatever easement there is does not extend to public access? Well, it is the agreement that gives rise to this, the declaration. It is the reason for the declaration, the basis for the declaration, that it is based on this agreement that was reached in 2015. I guess what I think maybe I'm tripping up on is if it's a declaration about an... I mean, I understand an agreement can be the basis for your claim of title, right? Or your claim of title unencumbered by a particular kind of easement, and that's quiet title relief. But if the declaration is a declaration about the government's contractual obligations under an agreement, that really resembles relief that is impliedly precluded by the Tucker Act. So... That is not the declaration that is sought. The declaration that is sought is that the public access is not allowed. Okay. That is the narrow declaration that is sought, that is public access is not allowed. And that is a declaration of property rights. And so, I mean, if you look at the... If you look at even... That's the test under MATAS, you look at the nature of the claim and the relief sought. And that's explained again in Wilkins, the same test. And the nature of the claim here is a dispute over the scope of the government's easement rights, and the relief that is sought is a declaration of property rights. And the declaration of property rights that is sought here is that the government does not have a right to allow public access over this road. And what the district court did was it drew a distinction between recorded and unrecorded instruments. But that distinction that the district court drew doesn't really make any sense because, as this court made clear in Robinson, a quiet title act claim can be made... Can arise under questions that may affect the claim of title. And cases... This court's cases reflect that questions often are raised by actions and not recordings. Questions that affect title are often based on actions or conduct or statements and not recordings. So moving on, the next issue is the first claim. And the issue with respect to the first claim is whether it's beyond dispute that the first claim is time barred. And the one takeaway I would like to leave you with on that issue is that this is a very narrow claim. It only seeks to quiet title to the unrecorded gap, not to the recorded easement. And there are two things that must occur before a claim accrues and the statute of limitations begins to run on a quiet title action. There has to be a disputed title, and then the plaintiff has to know or have reason to know of the disputed title. And the problem here is that there was no dispute over the unrecorded gap until 2015, when the government claimed for the first time that the recorded easement included the area that was not in the recorded instrument. Can I ask you, suppose... I understand you have some arguments as to why we shouldn't think this, but suppose we do think that the claim initially accrued back in the 60s and that you would need to show that there was an abandonment of the government's interest and then a reassertion in order to reset the clock. What do you think is the standard for abandonment that we should apply? So again, I would emphasize that this is a narrow claim and it is a claim to quiet title to the unrecorded gap. And this would be an abandonment theory that they abandoned the claim to the unrecorded interest in the gap. So that would be a very low threshold because it's an unrecorded interest in a gap. So an abandonment to something that they don't even have a recorded interest in would take very little, in my view. And how do we know from the cases that the issue is whether it's recorded versus whether it's a full ownership interest as opposed to an easement? Looking at Kingman and Schultz and Michelle, I'm trying to figure out what the rule is, and I'm not sure that it turns on whether something was recorded. I don't know that it does either, but I would say that when you don't even have a recorded interest, there's gonna be less notice. So for one thing... So there's less clarity. And so when you don't have an official interest, I would say there's no official interest that the government has in this unrecorded gap. I would say it takes very little to abandon it because there's no... They're not abandoning an instrument. They're not abandoning their recorded easement. They're merely interpreting. And I would say that that takes no official action. Counsel, as I read the BLM's letters, it looks to me like they dispute your claim that there even is a gap. So is that a dispute of fact between the government and the ranch? That's something that's gonna have to be resolved on remand. Some surveyors, some experts are gonna have to come in and draw the lines and say the property just doesn't close. Well, I think they have waffled on whether they dispute that. So I don't know what their current view is on that, but I think at some points they have disputed that and at some points they have agreed with us on that. And so does your claim... So part of the claim then might be whether there even is a dispute of material fact over whether we have a gap. And it appears that there may be some question about that, although it looks like BLM then later took the position that irrespective of any gap in the original document, that it was clear that an easement was granted across the road because you couldn't get from A to B unless you crossed this 350 foot... Yeah, I would say there are a lot of questions that still need to be resolved, and I think that's the problem with the procedural posture that we're... Your principle claim for abandonment rests on what? On the press release? Our claim for abandonment rests on the... What's the best evidence for abandonment? The best evidence is the communication that we received from the assistant director of the local office who told us that the BLM, the BLM as in the official BLM, not him himself, but the BLM had agreed that there was a gap in the easement and that the... And as a result, the easement was void. So we don't need to take the extra step because this is a oral communication? This was during a meeting, yes. And I'm still curious, was there a press release or wasn't there a press release? There was a press release, that is also in the record. Okay, and where is the press release in the record? I am sorry, I don't have that at my fingertips. I don't have rebuttal time or I would bring it to you in rebuttal and I think... We had trouble finding it. Oh, I can find it for you. Do you want me to look for it now? I can do it right now or I can bring it up after... I'd like you to bring it up. I'll ask for time so that you can bring it up. I'll find it and bring it up at rebuttal. I can do that. So I'll do that. And then... I'm sorry, I'm over time. Okay, while we're asking questions, you can keep answering, so it's fine. Go ahead. Okay. Sorry, was there any more questions you wanted me to answer? I'm not sure. Well, I had a follow up question. So you say that the easement was abandoned, but was the government ever stopping using the 350 feet or is it only a question of whether the public could also? Let me make clear that the easement was abandoned in 2015 when the gates were put up. And there were gates put up in 2015 and there was an agreement that the government could use it for administrative purposes only. That was in the nature of a license. That was... But I am talking about this... I think we need to circle back, and that's what I said at the beginning. We need to circle back and remember that the first claim is narrow and it's focused only on the abandonment of the gap. Any interest that the government might have had in the gap. And remember that abandonment claim, abandonment theory only restarts the clock on a statute of limitations. So it does not need to be a completed abandonment. It's not the merits. It doesn't have to be a valid abandonment. It only needs to be what a reasonable person in my client's shoes, or in Weibel's shoes, because Weibel was at the time, would have understood the government to have been doing. Because we're talking about statute of limitations. We're not talking about whether it was technically, like officially abandoned. We're talking about the reasonable person standard. How can those be different? Why would it be reasonable for a person to rely on a purported abandonment that was not actually adequate to be an official abandonment? I mean, it seems like if it's not an official abandonment, it would not be reasonable for somebody to rely on it. Well, statute of limitations are analyzed that way all the time. It's what a reasonable person would understand. And it doesn't... It's not about the validity of the claim. In other contexts, statute of limitations don't rely on the validity of the claim at all. It's about what a reasonable person would have understood at the time. And a reasonable person in Weibel's shoes, sitting in the office, talking to a BLM official who says, we agree that we have no interest in that gap. It's not in the recorded instrument. We agree that we have no interest in that gap, would have understood that they were abandoning any claim they might have had at one point to that gap. I mean, wouldn't a reasonable person know or suspect that low level BLM officials can't, in oral communications, abandon property interests held by the United States? But this is not a recorded instrument either. This is just an interpretation. And this low level, I mean, not really that low level, but this official was saying the BLM has decided. So in this communication, he wasn't communicating his own thoughts about the easement. He was communicating what the BLM's position was on the easement. And this is all... Sorry. It seems like you're saying, though, that the easement changed from an easement to a license, but the government was never agreeing to stop using the 350 feet itself, right? But it did agree to stop allowing public access, and it did agree that it did not have an easement to the gap. It agreed that it had no rights to the gap. But it's pretty subtle, because it was still gonna be able to keep using the gap for limited purposes under an agreement that was a separate agreement, all through this lower level person doing this, communicating the BLM's views. What... And let me just make clear, this is all the question of fact. These are very... I mean, the problem I'm trying to impress upon is that when you rule so early on in a case on these issues, you can't develop the facts. And this is an issue that was decided when you decided jurisdictional issues so early on in a case, you can't develop these facts. And these are all facts I would like to have much more development on, but it's just too... It was decided too early. What kinds of facts... I mean, can you sketch out what kinds of additional facts you think could be developed? I think one thing I would like to develop more facts on is, especially on the nature of the use of the roadway before the easement was recorded. That's one thing I would like to develop more facts on. It's touched on in some of the declarations. Cameron Teeter touched on it in his declaration, but he only hints at it. But it seems like maybe the easement was used the same way before 1964 as it was after, and there was no real difference in the use before and after. And I think that goes to whether there was a dispute, the timing of the... Whether there was a dispute before 2015. Okay, let's hear from the other side. Okay. Thank you for the extra time. I appreciate it. And I'll look for that in the record. That'd be great. Good morning, Your Honors. May it please the Court. Sean Martin for the United States. Asked that the panel affirm the district court's dismissal. As you know, there are two appellants and four different claims. So what I thought I would do is start with claims one and two, currently held by South Fork. And I'll start with the first claim. It's appropriate that this court affirm the district court's dismissal under a 12B6 standard. And that's because in its discussion, the district court... This is at South Fork ER 15 through 17. The rationale the district court used for dismissal is entirely consistent with 12B6. The district court relied on two things. The recorded easement, a copy of which was attached to the operative complaint. And secondly, the district court relied on libels at the time, plaintiff's concessions regarding Teeter's Road and regarding that claim. So why don't I go through those two bases? First, the recorded 1964 easement provided notice of a US property claim over Teeter's Road that clouded plaintiff's predecessor's fee title and supports 12B6 dismissal. Not only was that easement publicly recorded in 1964, but it's a full use easement, it's a perpetual easement, and it provides the United States the right of control over Teeter's Road to relocate it, to maintain, to construct. And I would also point out that plaintiff's counsel admitted in the district court that the recorded easement, would have put the owners on notice that the government had some interest in Teeter's Road through Weibel Ranch. And that's at South Fork ER 150, and the district court cited and relied on that and its rationale for dismissal. Part of the United States point is under the case law, it's not material to delve into the precise nature of what foot of the Teeter's Road easement is supposedly not valid and wasn't described in meets and bounds the proper way in the recorded easement. Instead, what's important is that the whole world and plaintiff's predecessors agreed in 1964 to give up their exclusive right of fee control over their private property by providing an easement that the whole point of which is to provide public access through the ranch to the public lands that are on the other side. Just by the common sense of the easement, which specifically mentions public access, and the whole point of it is to provide access to those public lands, the only way the easement would work and would be understood to operate from the get go is as a way to get through the private lands to the forest service lands that are to the north. Beyond that, under 12B6, the district court properly looked to plaintiff's concessions and I'll give three examples. One, plaintiffs conceded in their response to the government's motion to dismiss that at least a few trips a day, other than hunting season heavier, at least a few trips a day have occurred, quote, historically on Teeter's Road, South Fork ER 133, 134. Secondly, plaintiffs represented to the district court in an attachment to their operative complaint that Teeter's Road has historically provided public access from the south to the public lands to the north. That's Weibull ER 111. Third, plaintiffs also acknowledged in that same attachment to their operative complaint that members of the public had access to Teeter's Road through early 2015. My point being, it's not just the language of the recorded easement and that it was on the record that they acknowledged public use through the ranch, regardless of a gap, to the public lands. Okay, so what do we do with the events of 2015? Because I think that the claim is, that may be, but life changed in 2015 when the ranch came back to BLM and said, we've got a problem here and you've got a gap. And I've got... I feel like my head is banging between two walls here as I read the various communications from BLM. Right, right. Well, I'll point out to the panel first that the press release that you were asking about is in the record at South Fork ER 171, and that document was specifically referenced in the operative complaint. I believe that complaint site is South Fork ER 85. Now, a few points, Your Honor, about abandonment. First, we construe the operation of the statute of limitations in the Quiet Title Act strictly in the government's favor, because the Quiet Title Act, after all, is a limited waiver of sovereign immunity and its conditions are construed in favor of the government. I would point out that some of plaintiff's representations to the district court contradict their abandonment theory. Plaintiff's below told the district court in 2016 that the US, quote, currently holds an easement on Teter's Road. That's at Weibel ER 114, and also stated that the US presently holds an easement there, Weibel ER 118. There's also a problem in that US property interests that are established by the formal actions of the executive branch through here, a formal recording exercise, right, and consideration between two parties. That kind of formal property interest is not lightly abandoned, and it requires formal and unequivocal steps by the government. I think you would have a very strong case if all it was was the oral communications between BLM and the plaintiffs. But the press release says, you know, the landowner was able to proceed with the closure because the BLM's right of way obtained in 1964 did not cover the entire length of Teter's Road. I mean, that seems... There's a written document from the agency, seems fairly definitive. Why isn't that enough? Well, a press release, judges, I don't think on the level of formality, is a recorded public document that would take back what the United States already paid consideration for it as a perpetual easement. I don't think a press release is on that same level. What would we have to have? I think you'd have to have, well, obviously, a recorded relinquishment in public records that would be on the same level. Well, why would you need a recorded relinquishment if the claim is that the original document doesn't cover it? Why would you have to relinquish something that you didn't have? I understand that later on, BLM changes its mind about that, but at the time, BLM seemed to acknowledge that there was a 350 foot gap. How could they possibly issue something relinquishing something they didn't own? Judge, I think all I can say, it's obvious there was some confusion with... There's a great deal of confusion, and all this is about at this point is whether the statute of limitations resets. Right. That's all we're asking is whether they can go in and argue about all of these factual disputes about what you did or didn't tell them and what it does or doesn't mean, and whether there's even... I don't even know whether there's 350 foot gap in this record or not. A couple of points, Your Honor. First is, the press release was from a field officer at the BLM. It's not the same as the United States of America. Who did it have to come from? Did it have to come from Washington, DC? I think it would have to be on behalf of the United States of America. But you mean it would have to have to say the United States of America up at the top rather than the Bureau of Land Management, a part of the Department of Interior? Well, because the Forest Service also, its lands are accessed through this easement, right? This is a United States easement held on the behalf of all of the public and on multiple... I'm really confused as to sort of who's managing here, because BLM seems to be able to speak for you that it doesn't... That it's not relinquishing these rights when it's convenient for BLM to do that. On the other hand, it doesn't seem to be convenient for BLM to give it away. So now I'm really puzzled as to who's speaking for the United States here. Okay. Can I point this out as well that if we look at that press release, it doesn't abandon any interests that the United States has. It acknowledges there's a continuing right for the agency to access it and for local authorities. I would argue, Your Honor, that that is not a formal, unequivocal abandonment of any interest by the United States, because I would say at most, it's a limit. It's a constricting... Does it suggest that other people cannot use it now? That's what the press release said. That's what the press release says? Right. Okay. So why doesn't that just reset the statute of limitations so that we can just figure this thing out? Because I don't think it can be reasonably construed as an abandonment of the United States' interest in the easement in Teeter's Road. It expresses... It obviously shows you there's disagreement or confusion about the precise parameters of who is going to use that easement, but I don't think it's a statement, there's no United States interest in this. And is that because you think it didn't abandon the public use? Is that what you're saying? Well, I would say... Correct, correct. And do you think that that affects the level of formality that's needed, that there's something different? I'm still struggling with exactly what rule it comes out of these cases about when formality is needed, and can you help me with that? When do you think formality is needed? The United States' view is formality is needed. I look at Kingman Reef and I would also refer the court to the Grose case. This court decided in 1977 that when you have formal actions by the executive branch, those go through formalities and then they're not likely to be dropped or disregarded. Those are, after all here, rights for the public to access public lands. So a formal, unambiguous abandonment. And that would have taken the form of what? A directive from the secretary? An EO from the president? I think a letter. It wouldn't need to be a recorded document like you suggested earlier. It could be a recorded document, but I think a letter stating the United States position that it abandons its interest in the Teeter's Road. And that's how much... So I think your answer just now was, how formal does the abandonment need to be? But how formal does the creation need to be? Or what's the creation that then later triggers the formality of the abandonment? Does it have to do just with the formality of the creation or does it have to do with what is created? Is it about whether it's ownership or an easement? Is that different? I think it's more of the formality of just of the property that was created on behalf of the United States. When we look to Kingman Reef, if you've got a property, a property that's in the interest of the United States holds, that was created through formal executive branch actions. So it's that, not fee title or... But I'm having trouble how to... That doesn't work with Schultz and Michel, does it? Because in both of those, we had a military base and then we have public lands that were created. Both instances, they're created formally. So then if the government owns those things formally, the question whether they've given up some of that ownership, I don't understand how you're reading those cases then. Well, the United States looks at Michel and Schultz, a different nature of case. And this court got to that in McFarland. Our point is, Schultz and Michel involve when a plaintiff, under the Quiet Title Act, claims a non possessory interest. So there isn't a question of notice from a formal executive branch action. It's basically almost like a prescriptive easement, a non possessory prescriptive easement. But if the government owned that land, it had full ownership, could exclude anyone, there's some aspect of that ownership that's being given up less formally, even though the ownership was created formally. So it can't have to do with the ownership being created formally. It seems like you're saying something is different about who wants to use it. I think the government would say it depends on who's... When we're under the Quiet Title Act, is what is the plaintiff asserting? What kind of interest is the plaintiff asserting? And when, given the nature of what's being claimed, when did the clock start running? When did it accrue? And in this case, we point out that it accrued when these plaintiffs had notice of a cloud on their title, because their predecessors directly bargained with the United States to give that through access on Cheaters Road in 1964. And why do you... The plaintiffs in Schultz and Michel, what do you think the rule is? Can you say again? Well, and I think this is discussed in Kingman Reef, Your Honor, that Kingman Reef discussed Schultz and said, well, there when you have a plaintiff who claims a non possessory interest, there's essentially a lower standard for abandonment. But do you think that that's because the plaintiff there is not the government? I mean, so I'm trying to figure out if you think the issue is ownership versus non possessory interest or whether you think the issue is government versus private people or... I don't understand still. I think it's because this court's observed that a non possessory easement that a plaintiff claims under the Quiet Title Act isn't... That isn't necessarily inconsistent with government's fee title. And it's only when the government actually takes steps to block something that the plaintiff has already enjoyed, right? Already enjoyed access through a federal land area to get to their residence. If that claim would only accrue when the government starts to bar that use whatsoever. And that's Michael Schultz, McFarland, that line of cases. They're all about non possessory property interests, not from written documents, but asserted against the United States for non possessory property interests. Whereas we think there's a big distinction when it's an actual easement or another formally executed, formally acquired United States property interest in the first place. And we think that that starts when that cloud of title is a matter of public record, or when that predecessor and interest would be on reasonable notice that the United States has some sort of property claim over the private property. But the claim here, the allegation is that the claim is with respect to a portion of the road that is not subject to the formally recorded easement. So how does that affect your analysis? As a district court... It doesn't, Your Honor. As the district court noted, when you have this acknowledged through use at Teeter's Road for decades, the district court, I think, correctly hesitated at this idea of a gap that, well, if use is happening through the gap for so long, the predecessors would have been on notice of that use, and that there was a claim involving the entirety of Teeter's Road, that the public was using Teeter's Road for the whole point of the easement to get to the public lands, regardless of that gap. And our view is that the gap is more of a question about the validity of the easement, and there's nothing to establish that this gap couldn't have been uncovered earlier. Why did it have to be only 2015? I mean, there were surveyors... All of those are really good questions, and would suggest the statute of limitations ran a long time ago until BLM talks out of two sides of its mouth. That's the problem. And that just raises the question as to whether that is sufficient to constitute abandonment of the claim, so that we can now go back and do this thing on the merits, and sort of get it right. I'll say this, Judge. The United States doesn't think it rises to the level... When we look at the Quiet Title Act and accrual, and how the statute of limitations runs, and my other points about the agency retaining access, it's not a complete abandonment. My point would be this. It doesn't rise to the level of an abandonment. However, there is a means for these plaintiffs to seek redress in federal court, because after all, they've got essentially a breach of contract claim, the second claim for relief. And they're free to go pursue that in the court of claims. The 2015 agreement is, after all, dovetails with the supposed abandonment. And our point would be, you got a claim about a breach of a contract, and the government said, we don't have anything, and then the government changed its mind later in the same year. Well, that sounds as a breach of an express or an implied contract. What would the statute of limitations be on that contract claim? Have they missed that? I believe... I wish... I'm gonna say six years, Your Honor. They've maybe missed that. It's too late for them to do that. Unless there's some sort of relation back, but... And why do you think it's a contract claim? Right? Because I understood Ms. Smith to say that the claim is that... Everybody agrees they own the land in fee, but they're claiming we want a declaration that we own it in fee, unencumbered by the sort of easement that BLM claims to have. And the reason that it is unencumbered is maybe because of a contract, but the declaration they want is about ownership of the land. That sounds like a quiet title action. Well, but there's the first claim, right, which already is a quiet title action. And if we're talking about abandonment with regard to the first claim, because of a supposed 2015 agreement, then it seems like it's one and the same. It seems like, if I understand correctly, they think the first claim is about whether the government can use the easement, and the second one is about whether the government can let the public use the easement. I think that that's correct, Your Honor. And so then that could both be about the title, about the quiet title, right? Well, except that... The trouble is that the plaintiffs have represented that this is a breach of contract claim. And when you construe these waivers of sovereign immunity, as you have to in the government's favor, the plaintiffs told this court at a court of appeals docket 17-1 that the second claim is for breach of a 2015 agreement. Sure, it has implications or it has tie ins to title, but when it's brought as a breach of an agreement, express or implied, it really needs to be in a different court, not in this court. And I would also point out that as a district court... Suppose somebody buys a piece of land, or has a contract to buy a piece of land from the government, they buy the land from the government, and then sometime later, the government starts encroaching on the land or doing something to it, and there's a dispute about who really owns it, and the purchaser goes to the district court and says, I want a declaration that I own this land, and it belongs to me and not the government. The reason I own it is I have this contract to buy it. Is that a quiet title action, or is that barred by the Tucker Act, in your view? Yes, it would probably depend, Judge, on the specifics. What specifics would it depend on? Well, I mean, is this a question about the chain of title? Does it involve some other sort of side agreement? I mean, is that... I thought in order to determine which court had jurisdiction over the action, we would, for that kind of thing, we would look at the relief that's being sought. It seems odd that which court you file in would depend on lots of details to be clear. Well, I think the bottom line, if it truly is about a contract or an agreement, an expressed agreement or an implied agreement, then it needs to be in the court of claims. And the fact that someone wants a declaratory judgment, that is what it is, but that doesn't necessarily mean they get it when you are suing the United States under a contract theory. You won't get it. You'll get monetary damages and it'll be in the court of claims. So that is what it is. I think just focusing on what a plaintiff wants isn't the beginning and the end. You have to look to the essence of the claim. And I would point out this... And why isn't the essence of the claim what the plaintiff is asking for? In this case? Well, in general, and in this case, I guess. Well, again, Judge, I think it really just... It depends. It depends... I mean, is there a case that says that we don't look at whether what the plaintiff wants is a declaration about ownership? Instead, we look at whether they say something like, this is about a contract? What case says that? It really depends so much on the circumstances of a case. I mean, here, we have a supposed agreement in 2015, a supposed contract that the plaintiffs told the district court and they told this court is a breach of an agreement claim. Needs to be in the court of claims. There's no doubt about that. Well, I guess we have doubt about that. So do you have a case that says that we don't look at the fundamental thing they're asking for? Well, you... I think you look to what the waiver of sovereign immunity is for the nature of the claim. And if someone's asserting a breach of a contract, what their relief is gonna be is, I think, is a essence of that claim. And then you see, is there a waiver of sovereign immunity strictly construed in the government's favor that allows that claim to proceed? And here, the Quiet Title Act provides that if you've got a claim under the Tucker Act, you can't bring it under the Quiet Title Act. And I think a breach of contract claim, an asserted breach of contract claim is enough. I don't think the district court got it wrong. I'd also point out that for it to be a Quiet Title Act isn't too much because the Act has a mechanism that allows the United States at the end of the day to retain title to the property at issue by paying compensation through a district court process. So that's all part of the QTA scheme. So to seek a bottom line judgment through the QTA that there's no public access can't be obtained through the Quiet Title Act because the United States has the right to basically buy out the interest even if the district court were to hold against it and that the United States doesn't have that property interest at all. I think we've taken you way over your time. And I appreciate that very much. I haven't even gotten to the Weibull Ranch's fifth and sixth claims. If the panel has any questions, I'm happy to address those. I guess I'd like to hear the government's position on that. Why don't I start with the fifth claim, Your Honor? That alleges that the recorded 1966 easement at Big Summit Prairie did not allow public access. And this court should affirm dismissal under 12B6. The district court looked only to the 12B6 appropriate material. It looked to the recorded easement that was attached to the operative complaint. And as the district court noted, there weren't any restrictions on the use of that easement. It was to access... It was a full use easement and it was to access federal lands for all lawful and proper purposes. The district court correctly looked to CalNEVA, a reported federal district court decision from 1999. That's 70 F. 2nd, 1151. And as the district court recognized under Oregon authorities, guiding Oregon authorities, that the public can access public lands as an implied licensee of the United States. Here, this 1966 easement doesn't explicitly say in the clearest possible wording that the public has that right. But what the district court recognized, looking to CalNEVA, extremely similar language for an Eastern Oregon access easement to public lands, that at that, it's been well established that the public is an implied licensee and that a reasonable landowner would have known in 1966 that the United States easement rights could be asserted in that way to include public access. And to this court, the plaintiffs haven't made any argument whatsoever about why CalNEVA was wrong or why the district court erred in relying on it. And I would point out on Curtis, Nevada, the district court was clear that it wasn't looking to that as controlling authority, but more to the 1911, 1923, I believe, light of the United States and McKee v. Gratz, that it's been recognized since the early 20th century that the public is an implied licensee for public lands, including for recreational purposes. Looking to CalNEVA and the four corners of that easement, the district court didn't err under a 12b6 standard because it correctly found, as did the plaintiffs. And do you agree with the idea that there's nothing that we have before us that tells us whether anyone other than government employees were using it, using the easement? That's true, but the United States views it doesn't matter and that sort of extrinsic parole evidence is immaterial. District court recognized that and the authorities that cite it under Oregon law recognize that it's... When the language is unambiguous, the analysis, the question of law, of studying the easement and what it means, begins and ends with that language. And here, when you have no restrictions on the use, no restrictions on who can use, no reference to other... How far apart were the two easements granted? You're talking about Cal... Teter's Road and Big... A couple of years. A couple of years. The Teter's Road was 1964 and Big Summit Prairie was 1964. It doesn't specifically say the public. You're right, Judge. And it doesn't. It's left out of the other one. You're right, Judge. I mean, the Teter's Road easement used the clearest possible terminology, but in the district court... It wasn't lost in the district court. It recognized that in its ruling on the motion to dismiss, but the district court also recognized that the Big Summit Prairie, its use of licensees and the lack of restrictions on the uses and the fact that it's for the full use of public lands was unambiguous, and that it could be construed by the easement holder as allowing for public use. And that would be known to a reasonable landowner. And if I may briefly turn to the sixth claim. Briefly. We're way over. That claim, Your Honor, alleges that if the 1966 easement allowed public access. So it's premised on that. If it allowed it, then that was later abandoned by the United States. And we think the district court should be affirmed under 12B1. It recognized that as a matter of law, that the government cannot abandon a property interest by inaction. And that's what the sixth claim for relief is. It allowed for public access, but then later the government didn't do anything or didn't do enough. The district court got that right. Inaction isn't enough. Adverse possession doesn't run against the government. You said 12B1, but did you mean 12B6? Well, the district court looked at the sixth claim under 12, you know, dismissed it under 12B1. I think on the basis of it not being tenable as a matter of law. That would be usually 12B6, right? Well, 12B1 or 12B6, I believe the district court looked at it as 12B1. And we think, you know, if the rationale the district court used for the sixth claim is either 12B1 or 12B6. Okay. Do you have a follow up? No. Okay. We've taken you way over your time. Thank you very much. So now we have time for rebuttal, but I think we have gotten the... But maybe we should give you both some time for rebuttal because we've gone way over. So how about we put three minutes on the clock and then we'll put two minutes on the clock and try to make this fair. Go ahead. Thank you very much, Your Honor. I very much appreciate it. And I just wanna emphasize that my client is really just trying to get its foot in the door so that we can have this document interpreted. And at least as it relates to the big summit ranch easement, the government, at least as alleged, and the evidence that we put in when this was a jurisdictional issue, the government never took the position as alleged that this easement allowed for public access. And when we think about these, I'm gonna call them abandonment cases, but I feel like the word abandonment is being misused here. As I understand the word abandonment, as it's being used in the statute of limitations cases like Schultz and Mischel, they're talking about, is the government claiming an interest of some sort? And really what we're talking about is interpreting a document. So in Schultz, though it wasn't interpreting a document, the language the court uses, this court, is... The question is... There was a question about what's the standard. The question the court uses is, would the landowner reasonably believe that the government did not continue to claim an interest in the roadway? So if we take this back to the allegations in this case, we have affirmative acts by the government prohibiting government access. We have affirmative acts by the government understanding that libel is prohibiting government access. So that is how the government is interpreting this document. So we're not saying that there needs to be a formal abandonment. We're saying that's enough to start the statute of limitations when it changes its view. When it changes its view in 2021, there is now a dispute. I think... So my question is, what a reasonable person would think about whether the government abandoned is the level of formality for, you might not wanna call it abandonment, but continued assertion or whatever you wanna call it. I was asking what, at the beginning, triggers that level of formality later. So do you have a theory on that? Is it because it's an easement that you think just something more informal is gonna be okay later? Or do you think it's because it's the government's use versus other people's use or something? What do you think? I think it's because we're talking about the statute of limitations. That's really the issue. And if I can explain, it's because we're talking about what a reasonable landowner would understand under the circumstances. And if we go back to when the statute of limitations would run in a QTA case, this court's cases say it doesn't even matter whether the government's interest is valid. It's just whether you are on notice. And so we're thinking about notice. And I think that's the point Ms. Smith was saying. In statute of limitations, we often don't care about whether you have a claim or not. It's about what a reasonable person would know under the circumstances. So if we go to the allegations as it relates to the Big Summit easement, what a reasonable person would know is what's been alleged, which is the government prohibited public access. Weibel and its predecessor's interest, they prohibited government access. And that's the way it was for almost 60 years until we had this other dispute and suddenly they opened it up for public use. And so they never took the position that they had, that their interest was broad enough to encompass public use. Of course, they had an interest. No one's disputing that. But the question is, how do we interpret that type of evidence necessary to interpret this document under Oregon law? Thank you. Thank you. Thank you for the extra time, Your Honor. So yes, the press release is at South Fork ER 171. And then I'll just cover really briefly a couple of points. Just to emphasize that the question on abandonment is whether... A parent abandonment, that is the test. So it's really just what a reasonable person would understand in their shoes. And Schultz is a case where a parent abandonment was established by the government's inaction. So that is actually a very low threshold. In this particular case, I think I wanna point out that the easement itself was actually executed by a low level BLM official of the local office executed this particular easement. So I think it would be reasonable in liable shoes to think that a low level BLM official might be able to interpret the scope of this particular easement. And to respond further to the question about what we do on remand, I think we might want to depose the BLM manager who talked to us about what the BLM's decision was and to find out what his marching orders were so we could prove that there was an abandonment. But again, for statute of limitations purposes, all that matters is whether there was an apparent abandonment, which there was. So finally, in the 30 seconds I have left, on the second claim, you can't get a declaration of property rights under the Tucker Act, and that is what we're seeking in the second claim. We can only get that under the Quiet Title Act. And how is it... I mean, how is it different than what you get under... Why isn't it just duplicative of the first claim? Because the second claim is related just to public access. The first claim is related to the gap, solely the gap. Okay. So you could, you could, in principle, lose on the first claim, and we would say, or someone would say, the court, district court ultimately would say, there is no gap. But you might separately be able to say, the continuous non-gapped road is not open to the public, and that would be what would happen if you prevailed on claim two, right? Correct. Okay. Correct. Thank you. Thank you, both sides, for the helpful arguments. This case is submitted.
judges: BYBEE, FRIEDLAND, MILLER